2018 PA Super 238

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KASEY ROSE DISCHMAN | : | No. 1615 WDA 2017 |

Appeal from the Order Entered October 19, 2017
In the Court of Common Pleas of Butler County Criminal Division at
No(s): CP-10-CR-0001495-2017

BEFORE: BOWES, J., NICHOLS, J., and STRASSBURGER, J.[*]

OPINION BY NICHOLS, J.: **FILED AUGUST 29, 2018**

The Commonwealth appeals from the order dismissing one count of aggravated assault of an unborn child under 18 Pa.C.S. § 2606(a) against Appellee Kasey Rose Dischman. The Commonwealth claims that the trial court erred in holding that the nonliability provision in 18 Pa.C.S. § 2608(a)(3) barred the Commonwealth's prosecution of Appellee for the crime against her unborn child.[1] We affirm.

On June 23, 2017, Appellee was transported to the hospital due to a drug-related overdose. N.T., 7/11/17, at 3. Further testing at the hospital revealed that the overdose was due to opioids in Appellee's system. *Id.* at 4, 6. At the time, Appellee was approximately thirty weeks' pregnant. *Id.* at 4.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Section 2608(a)(3) states: "Nothing in [Chapter 26 of the Crimes Code] shall impose criminal liability . . . [u]pon the pregnant woman in regard to crimes against her unborn child." 18 Pa.C.S. § 2608(a)(3).

Appellee went into cardiac arrest and an emergency Cesarean section had to be performed on June 24, 2017 "because of [her] condition of being on a ventilator and the risk to the child." *Id.*

Appellee was initially charged with one count of aggravated assault of an unborn child. The magisterial district court held a preliminary hearing on July 11, 2017. The court denied Appellee's motion to dismiss and held the matter over for trial in the court of common pleas. *See* N.T., 7/11/17, at 12.

On July 17, 2017, Appellee filed a combined petition for a writ of *habeas corpus* and motion to prohibit the Commonwealth's criminal prosecution. On July 21, 2017, the trial court dismissed Appellee's petition without prejudice for failure to comply with Rule 578 of the Pennsylvania Rules of Criminal Procedure, which governs the filing of omnibus pretrial motions.

On August 2, 2017, the Commonwealth filed a motion to amend the information to include charges of endangering the welfare of children, corruption of minors, and possession of drug paraphernalia.[2] On August 23, 2017, the trial court granted the Commonwealth's motion.

On August 29, 2017, Appellee filed an omnibus pre-trial motion, seeking, in relevant part, dismissal of the count of aggravated assault of an unborn child. Appellee claimed that section 2608(a)(3) expressly prohibits the prosecution of a pregnant woman for crimes against her own unborn child.

---

[2] 18 Pa.C.S. § 4304(a)(1), 18 Pa.C.S. § 6301(a)(1)(i), and 35 P.S. § 780-113(a)(32), respectively.

Appellee also challenged the propriety of the count of possession of drug paraphernalia.

On October 19, 2017, following the hearing, the trial court granted in part and denied in part Appellee's omnibus pre-trial motion. The court found that although Appellee "is alleged to have done a senseless, selfish, and heinous act that, allegedly, resulted in devastating and permanent injuries to her unborn child," it was

> constrained by the clear, plain, and unambiguous language of 18 Pa.C.S.[] § 2608(a)(3), and the Pennsylvania Supreme Court's decision in [***Commonwealth v. Bullock***, 913 A.2d 207 (Pa. 2006)], to find that our legislature intended for prosecution under the Crimes Against the Unborn Child Act to be barred as to [Appellee], a pregnant woman, for crimes committed against her then unborn child.

Order, 10/19/17 at 3 (unpaginated). The court thus dismissed the one count of aggravated assault of an unborn child and held the remaining charges for trial. ***Id.***

On October 30, 2017, the Commonwealth filed a timely appeal[3] and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court filed an opinion relying on the reasoning set forth in its October 19, 2017 order.

The Commonwealth raises the following issues on appeal:

1. Whether the trial court erred in applying [***Bullock***] as precedent in the case at bar as it is inapplicable to the case at

---

[3] The Commonwealth certified that the trial court's ruling would terminate or substantially handicap the prosecution. ***See*** Pa.R.A.P. 311(d); ***Commonwealth v. Karetny***, 880 A.2d 505, 512-13 (Pa. 2005).

bar and serves no purpose to determine legislative intent for 18 Pa.C.S.[] § 2608(a)(3) as well as 18 Pa.C.S.[] § 2606(a)[.]

2. Whether the trial court erred in ruling that the language of 18 Pa.C.S.[] § 2608(a)(3) is clear and free of ambiguity[.]

3. In the alternative, if this Court were to determine that the language of 18 Pa.C.S.[] § 2608(a)(3) is clear and free of ambiguity, whether the trial court erred in determining that it was the intent of the legislature to prohibit prosecution under the facts of this particular case[.]

Commonwealth's Brief at 1 (full capitalization omitted).

The Commonwealth claims that the trial court erred in its interpretation and application of the nonliability provision in section 2608(a)(3).[4] According to the Commonwealth, section 2608 does not limit the prosecution of a pregnant woman who inflicts harm upon her unborn child "through the intentional and reckless use of an illegal substance known to cause death." *Id.* at 7. In support, the Commonwealth advances three arguments, which we address jointly.[5]

First, the Commonwealth begins with the premise that the General Assembly enacted Chapter 26 of the Crimes Code to protect unborn children. *Id.* at 10. The Commonwealth asserts that before the enactment of Chapter 26, the term "child" or "person" did not extend to a fetus. *Id.* Thus, the enactment of Chapter 26 recognized "the rights of an unborn child within the criminal realm to receive justice as a victim" of certain crimes. *Id.*

---

[4] The Commonwealth notes that this is a case of first impression.

[5] We have reordered the Commonwealth's arguments for the purposes of this appeal.

Second, the Commonwealth argues that section 2608 is ambiguous when read in isolation. *Id.* at 9. The Commonwealth asserts that section 2608 contains two additional subsections that prohibit prosecutions under Chapter 26 in instances of abortion and other legally protected medical procedures. *Id.* at 8-9. The Commonwealth thus contends that section 2608, when read as a whole, protects "a pregnant woman from prosecution for engaging in otherwise legal activities such as abortion and medical procedures." *Id.* The Commonwealth concludes that it would be absurd and contrary to the intent of Chapter 26 to interpret section 2608(a)(3) in a *carte blanche* manner to prevent prosecution of a pregnant woman engaged in illegal and reckless behavior such as drug use.[6] *Id.* at 8-9, 11-12.

Third, the Commonwealth asserts that the trial court erred in relying on *Bullock*. *Id.* at 5. The Commonwealth notes that the discussion of the potential nonliability of a pregnant woman in *Bullock* was *dicta*. *Id.* at 6. The Commonwealth instead suggests that the decision of *In the Interest of L.B., a Minor*, 177 A.3d 308 (Pa. Super. 2017), *appeal granted*, 183 A.3d 971 (Pa. 2018), is more instructive because it addresses "the illegal opiate drug

---

[6] In further support of its argument that the trial court's interpretation of section 2608(a)(3) could result in an absurd result, the Commonwealth poses a hypothetical. *See* Commonwealth's Brief at 12. It suggests that if another person injected a pregnant woman with an illegal substance that harmed her child, that person could be charged under Chapter 26, even if the pregnant woman consented to the injection. *Id.* However, under the trial court's interpretation of section 2608(a)(3), the pregnant woman could not be charged for a Chapter 26 offense. *Id.*

use by a pregnant mother that results in harm to her unborn child." *Id.* at 7.

Appellee and the *amici curiae*[7] assert that the trial court properly construed the nonliability provision of section 2608(a)(3) as clear and unambiguous. Appellee's Brief at 14-15; ACLU's *Amicus* Brief at 2; Women's Law Project's *Amicus* Brief at 5-6. They assert that the statutory text of section 2608(a)(3) precludes the Commonwealth's suggested distinction between a pregnant woman's legal acts and illegal acts that harm her unborn child. Appellee's Brief at 14-15; ACLU's *Amicus* Brief at 2; Women's Law Project's *Amicus* Brief at 5-6. Moreover, they assert that because section 2608(a)(3) is unambiguous, there is no need to examine the policy considerations underlying Chapter 26 as a whole. Appellee's Brief at 14-15; ACLU's *Amicus* Brief at 2; Women's Law Project's *Amicus* Brief at 5-6. The ACLU further asserts that the Commonwealth's suggested construction of section 2608(a)(3) raises serious constitutional concerns. **See** ACLU's *Amicus* Brief.

The Commonwealth's claim requires us to interpret the statutory language in section 2608(a)(3), which raises a question of law. **See Commonwealth v. Rushing**, 99 A.3d 416, 420 (Pa. 2014). Thus, our standard of review is *de novo* and our scope of review is plenary. **See id.**

---

[7] The American Civil Liberties Union of Pennsylvania (ACLU) and the Women's Law Project have filed *amicus* briefs in this appeal. Additionally, the Women's Law Project has filed an application to admit Christine Castro, Esq., *pro hac vice*. We grant that application.

Our Supreme Court has stated that in construing a statute, we rely on the Statutory Construction Act, 1 Pa.C.S. §§ 1501-1991. The Court further explained:

> The objective of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. [1 Pa.C.S.] § 1921(a). The best indication of the legislature's intent is the plain language of the statute. When considering statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." *Id.* § 1903(a). Further, when the words of a statute are clear and unambiguous, there is no need to go beyond the plain meaning of the language of the statute "under the pretext of pursuing its spirit." *Id.* § 1921(b). Thus, only when the words of a statute are ambiguous, should a reviewing court seek to ascertain the intent of the General Assembly through considerations of the various factors found in Section 1921(c).[8]

---

[8] Section 1921(c) states:

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

> (1) The occasion and necessity for the statute.
>
> (2) The circumstances under which it was enacted.
>
> (3) The mischief to be remedied.
>
> (4) The object to be attained.
>
> (5) The former law, if any, including other statutes upon the same or similar subjects.
>
> (6) The consequences of a particular interpretation.
>
> (7) The contemporaneous legislative history.
>
> (8) Legislative and administrative interpretations of such statute.

> *Id.* § 1921(c); *see generally Bayada Nurses Inc. v. Com. Dept. Labor and Indus.*, [8 A.3d 866, 880–81 (Pa. 2010)].

*Rushing*, 99 A.3d at 423. When reviewing a statute, "we may not render language superfluous or assume language to be mere surplusage." *Commonwealth v. Durso*, 86 A.3d 865, 867 (Pa. Super. 2013) (citation omitted).

Chapter 26 of the Crimes Code,[9] also referred as the Crimes Against the Unborn Child Act (Act), defines several crimes against unborn children,[10] including murder, voluntary manslaughter, and aggravated assault. *See* 18 Pa.C.S. §§ 2604-2606. Section 2606(a) provides that a "person commits aggravated assault of an unborn child if he attempts to cause serious bodily injury to the unborn child or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the life of the unborn child." 18 Pa.C.S. § 2606(a).

Section 2608, in turn, enumerates "nonliability" and "defenses" under Chapter 26. Specifically, section 2608(a) states as follows:

**(a) Nonliability.—**Nothing in this chapter shall impose criminal liability:

---

1 Pa.C.S. § 1921(c).

[9] 18 Pa.C.S. §§ 2601-2609.

[10] Chapter 26 adopts the Abortion Control Act's definition of unborn child as meaning "an individual organism of the species homo sapiens from fertilization until live birth." *See* 18 Pa.C.S. §§ 2602, 3203.

(1) For acts committed during any abortion or attempted abortion, whether lawful or unlawful, in which the pregnant woman cooperated or consented.

(2) For the consensual or good faith performance of medical practice, including medical procedures, diagnostic testing or therapeutic treatment, the use of an intrauterine device or birth control pill to inhibit or prevent ovulation, fertilization or the implantation of a fertilized ovum within the uterus.

(3) Upon the pregnant woman in regard to crimes against her unborn child.

18 Pa.C.S. § 2608(a).[11]

There is no dispute that the purposes of Chapter 26 include the recognition of unborn children as victims of certain crimes, including aggravated assault. Nevertheless, the text of the nonliability provision in section 2608(a)(3) is clear and unambiguous.[12] The General Assembly chose not to hold a pregnant woman culpable for "crimes" against her unborn child under Chapter 26. *See* 18 Pa.C.S. § 2608(a)(3).

Thus, we discern no textual support for the Commonwealth's argument that a pregnant woman's illegal action resulting in harm to the unborn child may give rise to liability under Chapter 26. *See Rushing*, 99 A.3d at 423; *Durso*, 86 A.3d at 867. Moreover, the Commonwealth's suggested

_____

[11] Section 2608(b) enumerates defenses based on justification. 18 Pa.C.S. § 2608. Section 2609 states: "The provisions of this chapter shall not be construed to prohibit the prosecution of an offender under any other provision of law." 18 Pa.C.S. § 2609.

[12] Indeed, the Commonwealth does not contend that a word or phrase in section 2608(a)(3) is ambiguous or open to multiple interpretations.

construction of section 2608(a)(3) asks that we depart from the plain meaning of the text to pursue the broader policy goals of Chapter 26 and to find ambiguity where none actually exists. This we cannot do under the guise of statutory interpretation. *See Rushing*, 99 A.3d at 423.

Accordingly, we agree with the trial court and hold that the unambiguous language of section 2608(a)(3) dictates that a pregnant woman cannot be held liable under Chapter 26 for crimes against her unborn child.

Although the plain language of section 2608(a)(3) is dispositive, a review of the legislative history of Chapter 26 further establishes that the result reached here is neither unintended nor absurd. As noted by the Women's Law Project, Representative Dennis O'Brien was one of the principal drafters of the statute. Women's Law Project's *Amicus* Brief at 9-11. During an exchange between Representative O'Brien and Representative Babette Joseph, the following occurred:

> Ms. JOSEPHS. Thank you, Mr. Speaker. For instance, a woman named Pamela Rae Stewart was prosecuted in California for not getting to her doctor fast enough when she went into labor and for having intercourse too late in her pregnancy. A woman in Wisconsin named Deborah Zimmerman was prosecuted for attempted homicide because she drank alcohol shortly before giving birth. In Florida, a woman named Kawana Ashley was prosecuted for manslaughter felony murder because she shot herself in the stomach when she was 25 to 26 weeks pregnant. In almost every case of this nature, the courts have thrown out the prosecutions. Sometimes after the woman has already spent time in prison, the courts usually base their conclusion on an interpretation that the State legislature could not possibly have meant to criminalize pregnant women's prenatal conduct. I am worried, in passing SB 45, Pennsylvania will be encouraging the prosecution of pregnant women who engage in arguably

unhealthy behavior during their pregnancies. Is it the intention of the Senate language to this bill or the bill that it should be used against pregnant women in any way? That is my question.

Mr. O'BRIEN. The answer to that question is, nothing in this chapter shall impose criminal liability upon the pregnant woman in regard to crimes against her unborn child.

Ms. JOSEPHS. That is criminal liability. What about civil liability? Is there any possibility we are going to have somebody step in, say they are representing the fetus, and getting an injunction against certain kinds of behavior that the pregnant woman might engage in?

Mr. O'BRIEN. Not by virtue of this specific legislation.

SB 45, 181st Gen. Assemb. Reg. Sess. 1997-98 (Sept. 22, 1997), at 1540-41. Thus, in response to the query of Representative Josephs, Representative O'Brien answered by essentially quoting the language of section 2608(a)(3) to suggest that a pregnant woman would not be held liable under Chapter 26 for her prenatal conduct.

Further, although we agree with the Commonwealth that **Bullock** is not binding authority under the circumstances of this case, the discussion in that case further defines the competing policy and constitutional concerns at issue.[13] The **Bullock** Court noted:

_____

[13] In **Bullock**, our Supreme Court addressed a male appellant's equal protection challenge to Chapter 26 based on the nonliability provision in section 2608(a)(3). In that case, the appellant was living with his pregnant girlfriend. **Id.** at 210. On New Years' Eve, they were both drinking and ingesting cocaine. **Id.** The appellant asked her to stop ingesting cocaine for the remainder of the night due to her pregnancy, which she did not do. **Id.** They argued and the appellant "blacked out." **Id.** When he awoke, he was on top of her, strangling her. **Id.** When she was nearly unconscious, he

In our view, the General Assembly had a legitimate basis for distinguishing between the mother and everyone else. Simply put, **the mother is not similarly situated to everyone else**, as she alone is carrying the unborn child. **Under prevailing jurisprudence of the United States Supreme Court, the fact of her pregnancy gives her (and only her) certain liberty interests in relation to the termination of that pregnancy that the Legislature could reasonably have sought to avoid infringing by exempting her from criminal liability under this particular statute.** Although the Act contains a separate exemption for voluntary abortion, *see* 18 Pa.C.S. § 2608(a)(1), **because of the mother's unique connection to the fetus there are various situations even outside of the abortion context (such as those pertaining to drug addiction or attempted suicide) in which she alone might bear an increased risk of criminal prosecution were it not for the (a)(3) exception.** The Legislature could rationally have taken this into account and sought to place the mother on a similar footing to all other persons as respects these types of situations.[8] While this does result in the mother being treated more leniently under the Act as regards crimes against her unborn child, such a result would only be constitutionally problematic if it stemmed from an arbitrary classification, which, as noted, it does not.

> [8] This Court need not presently opine regarding the legal propriety of a hypothetical criminal prosecution of the mother in such circumstances.

*Id.* at 216 (some citations omitted and emphases added).

Taken together, the legislative history of Chapter 26 and the *dicta* in

***Bullock*** suggest that the General Assembly was aware of the unique

relationship between a pregnant woman and her unborn child, as well as the

wrapped her feet, hands, and mouth with masking tape. *Id.* at 210-11. The appellant then continued to strangle her until she was unconscious and then dragged her body into the closet. *Id.* at 211. On January 6, 2003, the appellant confessed to the police, who found her partially-decomposed body in the closet. *Id.* The appellant was convicted of murder of his girlfriend and with criminal homicide of her unborn child pursuant to the Chapter 26. *Id.*

special constitutional issues surrounding the pregnant woman's liberty interests. In crafting section 2608(a)(3), the General Assembly chose a particular balance of its recognition of the unborn child as a victim of certain crimes and the interests of the pregnant mother. Given the unambiguous language of section 2608(a)(3), as well as the persuasive authority of the General Assembly's intent, we reject the Commonwealth's attempts to alter that balance.[14]

In sum, we discern no error of law with the trial court's holding that liability under Chapter 26 will not be imposed upon a pregnant woman in regard to crimes against her unborn child. Absent ambiguity in the statutory text, this Court cannot accept the Commonwealth's argument. Accordingly, we affirm the order dismissing the charge of aggravated assault against an unborn child.

Order affirmed. Application for admission *pro hac vice* granted.

_____

[14] Additionally, we find the Commonwealth's reliance on **L.B.** unavailing. **L.B.** was a dependency case that addressed section 6303 of the Child Protective Services Law, in which this Court held that drug use while pregnant may constitute child abuse. **See generally In the Interest of L.B., a Minor**, 177 A.3d 308 (Pa. Super. 2017). While **L.B.** stands for the proposition that a pregnant mother's use of illicit narcotics may result in consequences under the Child Protective Services Law, **L.B.** provides no support for the Commonwealth's suggested interpretation of section 2608(a)(3).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>8/29/2018</u>